ELIPHALET LYON, Executor of THOMAS B. STILLMAN, Respondent, *v.* SAMUEL G. MITCHELL, Appellant.

*Brokers, when duty complete—Influence with Administration not lawful Subject of contract.*

Brokers employed to negotiate sales of property have done their duty when they have brought the minds of the parties together on the subject-matter of the contract, and they are then entitled to their commissions.

A person having vessels or arms for sale, may lawfully employ an agent to sell the same to the government; and in the selection of such agent, it is legitimate to consider the influence which such agent may have with those intrusted with the administration. Personal influence and solicitation of legislators, judges, and public officers, is not a lawful subject of contract, and where such personal influence is the consideration the contract is void.

This action was brought upon an agreement in writing, in the words following:

"Whereas, I desire to sell the steamers Augusta, Alabama, Florida, and Star of the South: Now, in consideration thereof, and of one dollar to me in hand paid by Thomas B. Stillman, of the city of New York, I do hereby constitute him, the said Stillman, my true and lawful agent, or attorney, to dispose of said steamers, or either of them, at such prices and on such terms as may be hereafter agreed upon. And *I do hereby agree* to pay to said Stillman, his heirs or *assigns, ten per cent. of the total amount that said steamers, or either of them, may be sold for.*"

The Plaintiff counted upon this covenant, averring, in substance, that the sale of three of these vessels was effected in consequence of his efforts and labors, and claiming to recover his commissions on the sale.

The answer denies the allegations of the complaint, except as expressly admitted.

For further answer, the Defendant alleges that he signed the agreement at the request and after persuasion by the Plaintiff; that the Plaintiff never, to his knowledge, expended any money in effecting a sale of the steamers, or procured a customer for the

same, or set on foot any negotiations for the sale; that the steamers were owned by "The New York and Savannah Steam Navigation Company," as was well known to the Plaintiff, and were sold by the company, without the intervention of the Plaintiff, who had abandoned all right to sell them, and the Defendant had revoked the authority, and they were sold by another agent, who had been paid by the Defendant.

The Plaintiff proved, and read in evidence, the agreement, and gave evidence to prove his services, and tending to prove that he was the *procuring cause* of the sale of the vessels for $276,828, and rested.

The Defendant gave evidence tending to depreciate the value and efficacy of the Plaintiff's services, and to show that the vessels were sold to George D. Morgan, the authorized agent of the Navy Department, without the aid, intervention, or procurement of the Plaintiff, and that a brokerage of 2½ per cent. was paid by the seller to Mr. Morgan.

In reply, the Plaintiff gave evidence tending to show that the sale to Mr. Morgan was the result of his labors and negotiations, and that he assisted in the sale to Morgan.

The Defendant also gave evidence to prove that pending the negotiations with Mr. Morgan, he requested the Plaintiff to cancel the agreement sued on, and that, by letter, he "revoked the power given" to the Plaintiff to sell the ships.

The Plaintiff consented to deduct from his claim the commission paid to Mr. Morgan; and the questions of fact were submitted to the jury, who rendered a verdict for Plaintiff for the balance of his claim, for which judgment was entered, which was affirmed by the General Term of the First District, and the Defendant appeals to this Court.

The Plaintiff has died since the trial, and the suit is continued by his executors.

The points upon which the questions arise are stated in the opinion of the Court.

*Henry A. Crane* for Appellants.

*Wm. F. Allen* for Respondent.

HUNT, J.—The Defendant asks that the judgment below shall be reversed, upon the ground that the judge declined to charge " that to entitle the Plaintiff to recover, the jury must be satisfied that his agency was the procuring cause of the sale." The charge actually made was that the jury must find " that Mr. Stillman's action in the matter did direct or draw the attention of the Navy Department, or of Mr. Morgan, to these steamers, as vessels that were offered for sale, and lead to the negotiations that resulted in the purchase of the vessels." The two propositions are undoubtedly the same, and the language employed by the judge embodied the proposition as fairly as that desired by the counsel.

The Defendant claimed a ruling that " Stillman's agency was the procuring cause of the sale." This sale, it was proven, was made to the Navy Department through Mr. Morgan. It was conceded on both sides that the actual sale and transfer was always expected to be made by the Defendant, and the question was, whether the means employed by the Plaintiff had resulted in producing the sale that did take place. The question, as submitted by the judge, was, whether Stillman's action in the matter led to the negotiations that resulted in the purchase of the vessels. The prominent idea of each proposition is the same, and the jury, I doubt not, acted upon the precise principle laid down by the Defendant's counsel. I see no error in this particular.

The Defendant claims, again, that the contract, as established by the evidence, was in conflict with good morals, and against public policy, and therefore void. The evidence showed that the Defendant asked the Plaintiff if he could sell those steamers. He replied that he did not know. Defendant said : " You are acquainted with the Republican members of the administration." The Plaintiff replied that he " was acquainted with some, and had friends who could introduce him to others, and who could aid him." There is some embarrassment in the manner in which this question is presented. The Defendant submitted to the Court a series of propositions, which he requested him to charge, and under the fourth one of which he desires to raise the present

4

question. That proposition commences in these words : " Any contract which conflicts with the morals of the time, and contravenes any established interest of society, is void, as being against public policy." It then asks the application of such principles to the present case. This is the only one of the requests looking to this subject. The Defendant, I think, had no right to ask a charge that " any contract which conflicts with the morals of the time is void, as being against public policy." To make a contract thus void, it must be against sound morals. Morality is defined by Paley to be " that science which teaches men their duty and the reason of it " (Paley's Mor. Ph., v. 1, c. 1). " Morality is the rule which teaches us to live soberly and honestly. It hath four chief virtues—justice, prudence, temperance, and fortitude." (Bp. Horne's Works, vol. 6, Charge to Clergy of Norwich.) To make a contract void on the principle claimed, it must be against morality as thus defined. The " morals of the time " may be vicious. Public sentiment may be depraved. The people may all have gone astray, so that not one good man can be found. Sound morals, as taught by the wisest men of antiquity, as confirmed by the precepts of the Gospel, and as explained by Paley and Horne, are unchangeable ; they are the same yesterday and to-day. The proposition under consideration also contains a statement that a contract which " contravenes any established interest of society," is void, as being against public policy. This position is equally unsound; but I will not enlarge upon it. My examination of this question, upon the merits, has also brought me to the conclusion that no valid objection can be made to the decision of the judge at the circuit.

The whole of the Defendant's fourth request to charge, and upon which the question arises, is as follows : " Any contract which conflicts with the morals of the time, and contravenes any established interest of society, is void, as being against public policy. If the jury believe that the agreement on which this action is brought, was made in reference to the influence of the Plaintiff, or his friends, with the Republican members of the administration, or with any persons connected with the administration whose

duty it was to act in the purchase of steamers, and the percentage as commission was fixed in reference to that influence, that the contract is void, and no action can be sustained upon it."

The Defendant, and those concerned with him, had these four steamers on hand. The coasting trade in which they had been employed was broken up by the inauguration of war at the South. Open war against the government of the United States had been commenced nearly a month before the date of this contract. The vessels were useless for the service in which they had been employed, and for the business in which the Defendant was engaged. A deduction of ten per cent. upon their value, or the payment of commission to that amount, was not an unreasonable inducement to a sale, under such circumstances. No inference of corrupt intentions can therefore be drawn from the payment of a larger commission than was usually paid for the services of an agent or broker. The proposition under consideration, it will also be observed, makes no reference to corrupt intentions on the part of the agent, or of pecuniary influences to be used by him, or secret service to be employed. It presents but a single point, namely: that if the fact that the Plaintiff, or his friends, had influence with the administration, or with those whose duty it was to purchase steamers, was an inducement to the contract, then the contract is void. Two classes of cases are cited in support of this proposition, viz.: where a contract has been made to induce a particular legislative action, and where a contract has been made to procure appointment to office. Several cases of these classes are referred to in the recent case of Norris v. The Tool Company (2 Wallace's R. 45), and are cited with approval. Among them is Marshall v. Baltimore and O. R. R. (16 How. U. S. R. 314), where the principle is laid down, that all contracts for contingent compensation for obtaining legislation, or to use personal, or secret, or sinister influence on legislators, are void. That where an agent contracts to use, or does use, secret influences to affect legislative action, the contract respecting it is void. The learned judge, in deciding the case, says: "Public policy and sound morality do therefore imperatively require that courts should put the stamp

of their disapprobation on every act, and pronounce void every contract, the ultimate or probable tendency of which would be to sully the purity or mislead the judgment of those to whom the high trust of legislation is confided." It was further said that all contracts to evade the revenue laws are void as well as all marriage brocage contracts, and contracts for procuring appointments to office.

In aid of these views may also be cited Hatzfield *v.* Gulden (7 Watts' R. 152), which was an agreement to obtain signatures for a pardon; and Clippinger *v.* Hepbaugh (5 Watts & S. R. 315), which was an agreement to procure the passage of a legislative act by personal influence; and Pingry *v.* Washburn (1 Aik. R. 264), which was an agreement to pay for the withdrawal of opposition to an act of the Legislature; and Harris *v.* Roof's Executors (10 Barb. R. 489), which was an agreement to obtain legislative action recognizing an ancient land grant; and Debenham *v.* Ox (1 Ves. Sen. R. 275), which was an agreement to pay for soliciting a will in favor of another. Of the same general character is Gray *v.* Hook (4 Com. R. 449), where two persons, being applicants for an office, it was agreed that one should withdraw and aid the other in procuring the office, and in consideration thereof, the fees should be divided between them. The agreement was held void.

The general rule, as laid down in the cases cited, is a salutary one. Care is necessary, however, in its application. Certain other rules and principles are also to be remembered. Thus the right to sell and dispose of property is an essential element of ownership. It is a right to which the owner is entitled to the full and unrestricted enjoyment. So the time, place, and manner of sale are within the range of an owner's rights. He may sell personally or by agent, at private sale or by public auction. He may employ that agent who, by his zeal, his activity, his acquaintance, or his good character, may be likely to obtain the best price for the articles to be sold. So also a suitor in the courts of justice may employ that advocate who, in his opinion, has the best qualification to obtain the judgment he desires. To do so is his undoubted right. Industry, eloquence, high personal character, the esteem

in which he is held by the Court, may all justly be considered by the party making the employment. It is allowable to employ counsel to appear before a legislative committee, or before the Legislature itself, to advocate or approve a measure in which the individual has an interest (Mills *v.* Mills, 36 Barb. R. 474; Hillyer *v.* Tarenz, 1 Law Rep. 146; Howden *v.* Simpson, 10 Ad. & Ell. R. 793). It is allowable and not unusual to employ counsel, thus to appear before the Governor of the State, when he has under consideration the propriety of giving his sanction to a bill which has passed both branches of the Legislature. Will it be claimed that an advocate cannot be legally employed thus to appear, unless he is of a doubtful reputation, or personally offensive to the Legislature or Governor, or unless he belongs to a different political party? This will not be claimed. An advocate of high personal character would naturally and most properly be employed in the discharge of such duties, and one who was likely, by his personal qualities, or his political position, to be acceptable to the body before which he was to appear. The possession of such qualifications, and the knowledge of and reference to it, would not form an objection to the employment for an honest purpose avowed to the body before which the appearance is made, and by the use of just argument and sound reasoning; this is lawful (Auth. sup.). These principles are equally plain with those restricting the sale of political influence. Neither class of cases can be authorized. The law is to be so applied that both may be personal. A distinction may also well be made upon these cases, which, I think, will dispose of the present question. Personal solicitation of legislatures, or of judges, is not a lawful subject of contract. Personal solicitation of the governor, the President, or the heads of departments, for favors or for clemency, is not the lawful subject of a contract. The apprehension that considerations other than those of a high sense of duty, and of the public interest, may thus be brought to influence their determination, forbids this employment. But a different principle prevails where property is offered for sale to the government, and where a bargain is sought to be made with them, and where there is no

concealment of the agency. It then becomes a matter of traffic. The agent says that he has vessels or arms for sale, and that he can furnish the government with what it needs, and at a fair price; that the vessels are owned by Mr. Mitchell, or the arms are manufactured at Providence. As a general principle the seller desires to obtain a high price, while the buyer desires to purchase at a low one. This element is known and appreciated by each party in making a bargain. I know of no principle upon which a seller should be compelled to employ an agent who would be looked upon with suspicion and distrust by the party to whom he wishes to sell. In a time of revolution, when the Southern Confederacy, against which the arms or vessels were to be used, had friends at the North, would it be a legal objection to an agent desiring to sell munitions of war, that his loyalty was undoubted? I cannot think so. The present case was one of a bargain and sale simply. No fraud upon the government is imputed, no suggestion is made of pecuniary influence to be used, no intended corruption is suggested. The case to be decided is free from the existence of any of these elements. An agent of the same political party with the Executive, or the heads of departments, which fact would enable him to make an advantageous presentation of his merchandise, may, in my opinion, be lawfully employed to make sales to the government, and with reference to those qualifications. The decision in Norris *v.* The Tool Company (2 Wallace, 45), confounds a sale or traffic openly made by an avowed agent to a party wishing to purchase, with the forbidden case of an interference with legislative action or executive clemency, where the party does not profess to act upon commercial principles. There is a manifest difference in the principle governing the cases. I think that case was not well considered, and cannot adopt it as an authority for the present.

Judged by the principles I have set forth, the ruling at the trial was correct.

The rule of damages was rightly laid down, and I see nothing in the other points raised which will require a new trial.

Judgment should be affirmed.

GROVER, J. (dissenting).—In 1861, the Defendant was president of a company owning and running a line of steamers from New York to Savannah. Being desirous of selling the steamers, he gave the following contract to the intestate :

" Whereas, I desire to sell the steamers Augusta, Alabama, Florida, and Star of the South : Now, in consideration thereof, and of one dollar to me in hand paid by Thomas B. Stillman, of the city of New York, I do hereby constitute him, the said Stillman, my true and lawful agent, or attorney, to dispose of said steamers, or either of them, at such prices and on such terms, as may be hereafter agreed upon. And I do hereby agree to pay to said Stillman, his heirs or assigns, ten per cent. of the total amount that said steamers, or either of them, may be sold for.

" Dated, May 9th, 1861."

The evidence to the following questions was conflicting, but the verdict of the jury must, in this Court, be regarded as determining the facts, as follows:

That the Plaintiff, after receiving the above contract from Defendant, went to Washington twice for the purpose of selling the ships to the government. That he talked with the Secretary of War, and of the Navy, upon the subject, recommended the ships to them, urged them to purchase, but obtained no offer from either, nor any information, except that an agent would be appointed in New York to purchase for government. Some time after, George Morgan was appointed agent for that purpose, by the government, with instructions to purchase ships, and was to be paid a commission of two and a half per cent. by the vendors upon the amount of the purchases.

Morgan applied to the Defendant, and purchased from him three of the ships in question. Evidence was given that Plaintiff had some talk with Morgan about these ships, but he had nothing to do with negotiating the bargain for the sale with him. The Court, among other things, charged the jury " That the main question for the jury was, did Mr. Stillman's action in the matter direct or draw the attention of the Navy Department, or of Mr. Morgan, to these steamers, as vessels that were offered for sale,

and lead to the negotiations that resulted in the purchase of the vessels?" To this portion of the charge Defendant's counsel excepted, and requested the Court to charge "that his action must have been the procuring cause of the sale." The Court refused, and Defendant's counsel excepted. The Court had before charged that if Plaintiff was entitled to recover, he was so entitled to the full commission specified in the contract, upon the amount paid by Morgan for the vessels. The jury found this amount for Plaintiff, deducting therefrom the commissions—the two and a half per cent.—paid to Morgan. The Defendant, after affirmance of the judgment by the General Term of the Supreme Court of New York, appealed to this Court.

A number of questions were discussed by the counsel for the Appellant, which are not raised by any legitimate exception found in the case. At the close of the testimony, the Defendant's counsel presented some ten requests to the judge, to charge particular propositions, some of which were proper and others improper; and at the close of the charge excepted thereto, so far as it differed from the requests. This exception raises no question of law whatever. It is too general, and it was impossible for the judge to determine the particular points of the charge that the counsel considered as erroneous, and wished to have modified. This precise point was decided in Chamberlain *v.* Pratt (33 N. Y. R. 47), by this Court. It has been repeatedly held that the party excepting to the charge must put his finger upon the point complained of, so that the judge and opposite party may readily understand it, or the exception is unavailing. This disposes of the point ably urged by counsel, "That the contract between the parties contemplated, as shown by the proof, the use by the Plaintiff of improper influences, to induce the officers of government to purchase these ships, and that the contract was, therefore, illegal and void." No such question is raised by the exceptions in the case, and hence the Court have none such to determine.

The Court did not err in refusing to dismiss the complaint upon the ground that Defendant did not own the vessels. He contracted

in his own name, and personally agreed to pay the commission. It was lawful for him to do this, if he chose, whether he owned the vessels or not. No evidence was given tending to discharge the obligation primâ facie assumed by the Defendant by his covenant.

The second ground for the motion was equally untenable. That was, that it was against public policy to restrict the power of sale of the vessels to one individual. To this it may be answered, that the power of the owner to sell the vessels was not divested by the contract, and if it was, such restriction would not be illegal. In the absence of any contract, the owner alone could sell, and it is perfectly legal for him to contract that another shall have this power, exclusive of all others.

The important question arises upon that portion of the charge specifically excepted to. That presents the question whether Stillman entitled himself to the commission specified in the contract by directing the attention of the Navy Department, or Morgan, to the steamers, as vessels offered for sale, and leading to the negotiations which resulted in the contract. The judge charged holding that these facts did so entitle him. In this I think the learned judge erred. The fair construction of the contract is, that Stillman was not only to direct attention to the vessels as being for sale, and thereby cause negotiations between others that would lead to a sale, but that he was himself to negotiate a sale of the vessels, at prices thereafter to be agreed upon between him and the Defendant. That he was to do all this as the consideration of his commission. That he was to render all the services necessary to be rendered by the vendor in the examination of the vessels, and furnish the purchaser with all requisite information as to the condition and quality of the vessels, and devote his time and skill in negotiating as advantageous a bargain as practicable. When agents are employed to transact important business for which they are to receive large compensation, it is the skill of the agent that induces the employment, and the agent is bound to apply this skill to the conduct of the business. The contract of the Plaintiff required him to negotiate the sale, and relieve the Defendant

from the entire business. This he was bound to do to earn his commission. By the doctrine of the judge, the commission was earned by the Plaintiff's advising and informing the Navy Department and Morgan that these vessels were for sale, if such information induced Morgan to call upon the Defendant, and led to negotiations with him, resulting in the sale. By the contract, Stillman was to make the contract of sale. By the charge, if he gave information that enabled the Defendant to make the contract, it was held sufficient. Various authorities are cited as sustaining the principle of the charge. None of these that I have consulted go to that extent. In Doty *v.* Miller (43 Barb. R. 529) the broker, or agent, had negotiated a contract, which failed in consequence of an alleged defect in the title of his principal. Glentworth *v.* Luther (21 Barb. R. 145) holds that a broker employed to sell real estate, without power to convey, has earned his commission by finding an acceptable purchaser, ready and willing to enter into a contract, upon the stipulated terms, with the vendor. This is all that such a broker can do. He has fully complied with his contract. In Moses *v.* Bierling (31 N. Y. R. 463), it was held that a broker was not entitled to his commission unless he had performed his contract. That such contract was performed when he produced a purchaser willing to take the property at a price satisfactory to the principal. That the right to commissions could not be defeated by a prior sale of the property, through the agency of another broker, when the principal had covenanted that the first broker should have the exclusive sale of the property. This case, so far from sustaining the charge, is a direct authority against it. Indeed, in no case is a party entitled to the stipulated compensation, unless he has performed his contract. If he is prevented from performing it by the other party, he is entitled to the commission so far as he has performed it, and to damages for the breach. In some cases this might amount to the entire stipulated compensation, but not when further time was to be bestowed and further services rendered by the agent. That is this case.

But some of the judges are of opinion that the exceptions

taken do raise the question whether there was such evidence given in the case as to require the judge to submit the question to the jury, whether the contract did not contemplate the use of corrupt means to induce the government to purchase the vessels, and therefore said, and have arrived at the conclusion that no such evidence was given. In this I cannot concur. Although the contract is silent as to the contemplated purchaser, the case conclusively shows that the United States government was the only one in view of the parties. It was further shown that the negotiations between these parties were commenced by the inquiry by the Defendant of the Plaintiff, whether he was in good standing with the Republican administration at Washington; to which the Plaintiff answered, in substance, that he was, and could, through friends, get favorably introduced. The Defendant said he was a Democrat, and intimated that he could not negotiate with them. Upon this state of facts the contract was executed, giving the Plaintiff ten per cent. commission upon the amount of the sales of the vessels. The case shows that the vessels were expected to be sold for some two or three hundred thousand dollars, thus giving the Plaintiff twenty or thirty thousand dollars for negotiating a single bargain. The inquiry upon this state of facts arises, whether this extravagant commission was agreed to be given for the extraordinary skill of the Plaintiff in such negotiations, or whether it was to compensate him for bringing to bear, upon the administration, political influence to induce a purchase of vessels it would not otherwise make, or to purchase upon terms more favorable than it would otherwise purchase of the seller. If to compensate for the former, the contract is lawful. Parties may at their pleasure fix their own price upon their skill, learning, fidelity, or reputation for integrity, to be applied in the service of another. But if for the latter, I think the contract corrupt and plainly contrary to public policy. It is the duty of public officers having authority to make purchases of supplies for, or other contracts on account of government, to be guided solely by their judgment as to what will conduce to and promote the public interest, and in this to include the entire public. Any favors to

political partisans in such transactions can only be given at the expense of the entire public, and, consequently, are against public policy and corrupt. A disposition to extend such favors in the business transactions of the government cannot be too severely censured or promptly checked. It is the prolific mother of the grossest corruption. We have seen in its indulgence a United States Senator coolly pocket forty thousand dollars for negotiating a contract with the government for the sale of guns to it. This is but a single instance out of a great number of its kind. In the present case, no one can suppose that the Defendant would have given one-tenth of the proceeds of the sales of the ships for negotiating the bargain, unless he expected, by some means, that they would be sold for more than their fair market value. The conversation between the parties plainly points to the means contemplated, namely, political influence and favoritism. I am at a loss to see how anything in the then situation of the country, or the political sentiments of the people, so ably presented in the prevailing opinion, can have any bearing upon the question. Surely, loyalty was not at so low an ebb as to render its encouragement necessary by fat contracts with the government! But, as above remarked, I do not consider the exception taken upon the trial as sufficient to raise this question, and shall not, therefore, discuss it further.

For the reasons first stated, that the Plaintiff's intestate never negotiated any bargain for the sale of the vessels, and for the error in the charge, that this was not necessary to a recovery, but that it was sufficient if he gave information which led to negotiations and a sale by Defendant, the judgment should be reversed, and a new trial ordered.

Affirmed.

JOEL TIFFANY,
State Reporter.