JAMES S. L. CUMMINS, Trustee, etc., Respondent, v. WILLIAM V. BARKALOW, Appellant.

AGREEMENT. ALLEGATION OF CORRUPT AGREEMENT; WHEN TO BE INTERPOSED. PLEADINGS. DEFENSE. ANSWER. APPEAL REVIEW. TRUSTEE OF EXPRESS TRUST UNDER SECTION 113, CODE. JOINDER OF PARTIES.

Where a contract for the delivery of arms to the government, specifying the time of such delivery, is subsequently modified, at the request of the contractors, by an order extending the time in which to deliver the arms, and expressly stating, that all the other terms and conditions of the original order (or contract) are to remain unchanged, and which is subsequently still further modified by an order limiting the number of arms to be accepted, and that number is delivered and paid for accordingly, — held, that the transaction had its inception in, and was predicated upon, not a new and different order or contract, but upon the original order or contract, which was at no time abrogated, but was kept alive and continued in force by the subsequent orders — though in a modified form — until the final delivery of the arms.

The agreement of the contractors, among themselves, as to the share of the profits of each, respectively, made in consideration of the original order, will be enforced upon the completion of the contract under its modified terms.

Where the share of one of the parties in the profits of the contract was in consideration of his services in procuring the contract from the government, and the agreement calls for the exercise of no illegal or improper influence on his part, such will not be presumed, so as to vitiate the agreement as being corrupt and against public policy.

Where, in an action upon a contract to recover the plaintiff's share of the profits accruing thereunder, it is sought to defeat a recovery, by an allegation that the contract was void, as being corrupt and against public policy, such defense should be interposed in the answer, or at least raised in some legitimate form upon the trial. This court cannot take cognizance of a defense interposed for the first time upon the hearing of the appeal.

For what constitutes a trustee of an express trust, within the meaning of section 113 of the Code, so as to authorize an action to be brought by the trustee without joinder of the beneficiary of the trust, see statement (p. 515), and opinion (p. 524).

APPEAL from judgment of General Term of Superior Court of the city and county of New York, affirming judgment of Special Term in favor of the plaintiff.

The action was brought to compel defendant to pay over certain profits on a contract with the United States government, and the issue joined therein, was tried before Chief

Justice BOSWORTH, January 22, 1863. It appeared upon the trial that one Halderman, by his efforts, obtained from the war department an order in favor of the defendant, who had made written application therefor, for twenty-six thousand Enfield rifles, on the 2d of November, 1861, to be delivered as follows: Three thousand in sixty days, three thousand in ninety days, and four thousand per month thereafter. Halderman brought the order to New York, and the following contract was entered into:

"NEW YORK, Nov. 12, 1861.

"John Halderman has procured for me an order from the war department, dated Nov. 2d, 1861, for twenty-six thousand stand of arms.

"I hereby agree to pay to John Halderman or his assigns, upon each delivery to the government, one-fourth of the profit realized upon each delivery, in cash.

"The expense of the agent going abroad not to be counted as part of the cost of the arms.

"That is, John Halderman or his assigns are interested with me to the amount of one-fourth in this matter, one-fourth being given to the capitalist who furnishes the money for that consideration, and one-half being the share of Kirkpatrick and myself. The net profit will be the difference between the cost of the arms delivered to government and the price received for them.

"W. V. BARKALOW."

On the 13th of November, 1861, Halderman assigned the contract to the plaintiff in trust for his wife to reimburse her for moneys due her for advances made him by Mrs. Reigars, and given to his wife by Mrs. Reigars. On the 18th of November, 1861, one Kirkpatrick, who was interested with the defendant in the contract, started for Europe to fill the order. He was unsuccessful, and returned on the 3d of January, 1862. On the 6th of January, 1862, Kirkpatrick, in the name of defendant, made application for a new order for twenty-five thousand rifles at new terms of delivery. In this application no answer was made, and on the 15th of

January, 1862, the defendant made an application to the war department for an extension of the time of delivery under the original order of November 2, 1861, and stating "this is the only particular in which I wish to have the order changed." On the same day it was recommended by the assistant secretary of war, that the extension be granted on the 14th of January. An order extending the time of delivery was made under order of November 2, 1861, which stated "all the other terms and conditions of the order of the 2d of November, 1861, to remain unchanged." Soon after followed an order suspending all contracts, and an order for a commission, with a report in favor of receiving eight thousand rifles under the order, and the delivery and acceptance of the same by the government. The facts in reference to the proceedings, so far as material, some of which are not herein fully stated, are adverted to in the opinion. The defendant gave evidence also of conversations between himself and Halderman, and Kirkpatrick and Halderman, tending to show statements by Halderman to the effect that he did not consider the order of any value, and that he refused to make efforts to procure its extension, which testimony was contradicted by the plaintiff's evidence. The judge gave judgment for the plaintiff, and found, among other things, that the defendant under the order of November 2, 1861, and of the extension of January 14, 1864, as modified by the report and decision of the commissioners, and the defendant's acceptance thereof, delivered eight thousand rifles, and received $160,000 in payment for the same, and directed an accounting before a referee. It appeared upon the accounting, that the firm of McLean & Co., advanced the money for the purchasing of the rifles, and were to receive one-half the profits. The balance the referee divided equally between the defendant Kirkpatrick and the plaintiff, deducting $500 and interest paid to Halderman, and reported in favor of the plaintiff for $6,183.40. The plaintiff excepted to the report, but exceptions were overruled, and report confirmed, and final judgment entered in favor of the plaintiff. The defendant excepted to the findings of the court, but the exceptions

relate mainly as to whether rifles were delivered under first order. The General Term affirmed the judgment, and the defendant appeals to this court.

*James T. Brady*, for the appellant.

I. We say that the defendant's answer was fully maintained by proof.

1. The agreement between him and Halderman is founded exclusively on the first order and its fulfillment. It shows, too, that it was contemplated that a "capitalist" should advance the money to buy the arms, receiving one-quarter of the profits for doing so, Halderman to have one-quarter also, and the other half "being the share of" Kirkpatrick and defendant.

2. Defendant's first proposition to the government is at folio 37. His references were Governor Sprague, Secretary Chase, and Secretary Smith, and the application made with a letter of introduction from Thomas A. Scott, acting secretary of war, to General Ripley, chief of ordnance.

The application was rejected.

3. Defendant's second proposition was made to Mr. Scott, October 30, 1861. This being referred to the ordnance office, the order of November 2, 1861, was offered to defendant, and, accepted by him.

4. This order falling through, defendant made the third, and an entirely new application, on the 6th of January, 1862.

5. In the whole transaction, Mr. Kirkpatrick was the efficient party, as will be seen from the fact that he went to England to fill the first order, but was prevented by the effect of the Queen's proclamation.

Kirkpatrick's testimony: He shows that Halderman not only did not procure the order or effect the sale of the rifles to the government, but alleged that it could not be effected, and in this connection stated several untruths about alleged interviews with officers of the government, which had never happened.

II. The original order was not continued in force. General Ripley extended the time for the delivery of the twenty-

six thousand rifles, but expressly reserved "all the other terms and conditions of the order of November 2, 1861."

III. If Kirkpatrick's statement were true, Halderman was merely employed to use his influence with the government. If this were so, the contract was against public policy, and void.

IV. Halderman's testimony does not overcome either of the propositions above stated. He pretended · that he was two months in Washington, laboring to obtain the first order, whereas, we see from the date of the application, that the order was issued three days afterward.

He attempts to convert the new order into a renewal of the first.

He says Colonel Scott promised that he would grant the application, though the first order had failed, "when there was a probability of the arms being delivered."

Yet he says that the first he knew of what he calls the renewal, was when the correspondence was published, which includes defendant's letter of January 6, 1862.

A part of his history is given at fol. 133. His great "influence" at Washington was illustrated by his failure to get his brother appointed in the army; after which he wandered around Washington, having "never entered upon any regular employment there."

All the while he pretends to have been toiling for defendant, he was in fact trying to get a contract for Springfield muskets, in connection with a gentleman named "Muir."

He pretends that he saw Colonel Scott between the 2d and 13th of January, and yet the latter told him nothing of the defendant's new application, dated January 6, 1862.

V. The assignment to plaintiff did not constitute him trustee of an express trust within the meaning of the Code, · nor was it *bona fide*.

VI. The findings of the court are erroneous, and were correctly excepted to.

· *William Allen Butler*, for the respondent.

I. The several findings of fact by the court at Special Term upon the conflicting evidence are conclusive, and they are

fully supported by the evidence. The original order of November 2, 1861, was not abrogated by the government of the United States, nor by the war department thereof, and the 8,000 rifles delivered by the defendant, were so delivered under the said original order, as extended and modified.

1. The defense set up in the answer, that the order of November 2, 1861, for 26,000 rifles was abrogated by the government, and a new and different order given for 8,000 rifles, wholly failed. The evidence showed, beyond question, that the original order was kept alive and continued in force, and was the order under which the delivery was finally made.

This is the only finding of fact to which exception is taken.

II. The plaintiff, being interested, as assignee of Halderman, under the agreement with defendant, in one-fourth part of the profits realized upon each delivery under the order of November 2, 1861, was, therefore, entitled to an accounting and to that proportion of the profits on the 8,000 rifles actually delivered. The enlargement by the war department of the time for the delivery, and the modification by the commission in respect to the number of rifles, did not affect the plaintiff's rights. (*Keating* v. *Price*, 1 Johns. Cas. 22; *Muzzy* v. *Whitney*, 10 Johns. 226.)

Even if a new order had been substituted, that could not affect the right of the plaintiff to the stipulated compensation for services rendered to Halderman in procuring the original order, if, as the result of it, any profits were realized. (*Wilkinson* v. *Martin*, 8 Carr. & P. 1.)

III. The mode of ascertaining the amount of profits to which the plaintiff was entitled was correctly prescribed by the judgment. It followed the rule fixed by the parties in the contract, which expressly provided that the "*net profit will be the difference between the cost of the arms delivered to government, and the price received from them.*"

IV. The reference was in all respects properly directed. (Code, § 271.) The referee's report was more favorable to the defendant than is warranted by the letter of the contract, or by the literal terms of the decision of the court. It is not

excepted to by the defendant. It is, therefore, not a subject of review on this appeal.

V. The objection that the contract between Halderman and defendant was void upon its face, as being against public policy, is wholly untenable, and cannot be considered on this appeal.

1. This point was not raised by the answer; it was not taken at the trial, and no proof was offered to sustain it, nor request made either for a dismissal of the complaint, or for judgment on any such ground. Nor is it raised by any exception in the case. The opinion of the court below shows that it was not even stated in the points at General Term, but was suggested in oral argument. It cannot be raised now. (*Ingersoll* v. *Bostwick*, 22 N. Y. 425; *Grant* v. *Morse*, id. 323; *Carman* v. *Pultz*, 21 id. 547; *Lyon* v. *Mitchell*, 36 id. 683.)

2. But on the merits the intimation of improper "influence," is wholly without foundation. What Halderman agreed to do, and did, was simply to avail himself, as he had a right to do, of his good repute with the officers of the government charged with the duty of purchasing arms, to make a fair presentation of the facts of the case, and urge the making of the contract.

No corrupt, secret or questionable means were used, and the case is wholly free from any suspicion.

3. The sound distinction taken by this court, in a recent case, between open dealings with the government by agents in the course of commercial transactions and the exercise of influence to secure legislative or other governmental action on the score of personal favoritism, applies to this case. (*Lyon* v. *Mitchell*, 36 N. Y. 235.)

4. Even if the objection could be taken, there was no vice in the contract on its face. It called for no service or action on the part of Halderman, nor for the use of any influence whatever, but was simply an engagement on the part of the defendant to account for a stipulated portion of expected profits in consideration of past services rendered by Halderman and referred to by way of recital. It cannot be implied

from the contract that the consideration thus recited was in any manner tainted by any corrupt element, and no proof was offered, or finding requested, by which such corrupt element could be imported into the contract.

VI. Certain objections were taken on the argument below, which are not the subject of any exception, and cannot be raised on this appeal.

1. That there was a want of consideration, or failure of consideration. This is disposed of by the finding of fact, that the order of November 2, 1861, was procured by Halderman on an agreement by defendant, that Halderman should be compensated therefor, as in and by the written agreement provided. To this finding there is no exception, and the evidence fully supported it.

2. That the plaintiff had not legal capacity to sue. This objection was not taken by demurrer, and was, therefore, waived. (Code, § 144, subd. 2, § 148.)

The plaintiff was a trustee of an express trust, and the action was properly brought in his name. (Code, § 133.)

3. That Kirkpatrick was a necessary party defendant.

This objection was not taken by the answer, and is waived. (Code, § 148.) It would have been untenable, if taken, as the contract of defendant was a personal undertaking, for which he is properly made individually responsible.

MILLER, J. This action was brought by the plaintiff as the assignee of one Halderman, to recover one-fourth of certain profits realized by the defendant upon a contract or order made by the government of the United States, with him, for the delivery of Enfield rifles. It is not denied that Halderman obtained an order from the government for the purchase and delivery of rifles; but it is claimed that no rifles were ever delivered under said order, which was abrogated by the government; that rifles were delivered under another and a new and different order, in which Halderman had no interest, and with which he had no connection. The agreement between Halderman and the defendant shows, upon its face, that it was based upon the order made by the

ordnance department, on the 2d day of November, 1861, which was accepted by the defendant, and unless the rifles were delivered under this order the plaintiff cannot recover. The Special Term found that the rifles were delivered under and in execution of said order, and the extension and modification of it made by the government, and this finding is abundantly supported by the evidence. It must be conclusive, unless it is entirely without evidence to sustain it. That such is not the case is apparent by a recurrence to the leading facts relating to the order in question.

It appears that the contract between Halderman and the defendant was entered into on the 12th of November, soon after the order was made, and the defendant immediately sent an agent to England to fill the order. The agent returned, being unable to forward the rifles, by reason of the Queen's proclamation prohibiting the shipment of arms, and the defendant made another application to the government, stating the facts, and that he had thus been prevented from making the delivery according to the terms of the order, and as the non-fulfillment of the order did not occur in consequence of any fault on his part, asking for a new order. No answer was made to this application, but soon afterward another application was presented, asking for an extension of the time for delivering under the aforesaid order. The application stated that this was the only change desired, and was granted. After this, a general order was issued by the war department, suspending the execution of all contracts for arms, and a commission on ordnance and ordnance stores was appointed to make investigations in regard to them. The defendant applied to the commission to continue the order, and they reported in favor of receiving eight thousand rifles under the order, and that the defendant had notified the commission, in writing, of his acceptance of this as perfectly satisfactory. The eight thousand rifles were delivered afterward and accepted by the government. It is very evident, from the facts stated, that the proceedings of the defendant were all predicated upon the original order, which was never at any time abrogated, and which was kept alive

and continued in force until the rifles were actually delivered.

The delivery of the rifles was had by virtue of this order alone, and all that transpired intermediate its date and its final consummation related to carrying into effect that order, and was not in the nature of a new and different order from the one obtained by the plaintiff's assignor. The defense interposed, in my opinion, is not established by the proof, which, at most, shows only an extension or a modification of the contract, as to the time within which it was to be performed, and in no other material or essential part.

It is claimed by the defendant upon his points, that, if the statements of Kirkpatrick, who was sworn and testified as a witness on the part of the defendant, and was a partner in the contract, were true, Halderman was merely employed to use his influence with the government, and that, if such was the case, the contract was against public policy, and void. It is, perhaps, a sufficient answer to this position to say, that the statements of Kirkpatrick, as a witness, are denied by Halderman, so that there would be a conflict upon this point in the testimony which the court alone could determine if deemed important, or if called upon to do so, and which has been disposed of by the findings in the case. It may also be remarked, that the contract was entered into with Halderman after he had procured the order and the services in obtaining it had been rendered, and that there is nothing to show any undue or improper influence exercised in procuring it, or any efforts made by him which were not entirely fair and honest. Nor does his subsequent conduct indicate that he did any thing more than to make a presentation of the facts in obtaining an extension of the time and a modification of the terms, so as to enable the defendant to fulfill the contract.

The transaction appears to have been an open one, and the defendant paid Halderman $500 on the agreement, thus signifying that it was satisfactory and met his approval. In fact the contract itself on its face contained no such defect. It called for no illegal or improper action on the part of Hal-

derman; it demanded the use of no improper influence; it was a simple promise in consideration of services previously rendered by Halderman, which were entirely legitimate, to account for a certain share of the profits ultimately realized; it contained within itself no illegal or corrupt element which stamped it as vicious and incapable of enforcement, and no proof was given to show that it was thus tainted before it was executed.

Independent of these views, which effectually dispose of this branch of the case, it may be added that no such defense was interposed in the answer, and no such question raised upon the trial. No motion was made for a nonsuit or request to dismiss the complaint upon any such ground. Nor is there any finding, or any exception taken, which presents the point. If the defendant had intended to raise any such question, he should, at least, have requested the court below to have made a finding of fact, as to whether or not the services rendered consisted merely of the use of his influence with the government in securing the contract, and whether they were of an improper or unlawful character. The practice is well settled in such cases, and there is an utter failure to comply with it here. (*Ingum* v. *Bostwick*, 22 N. Y. 425; *Grant* v. *Morse*, id. 323; *Carman* v. *Pultz*, 21 id. 547; *Lyon* v. *Mitchell*, 36 id. 683.)

I think that the plaintiff was a trustee of an express trust, within the meaning of the Code, section 113. The assignment of the demand of Halderman against the defendant to the plaintiff was for the benefit of another, and the action was properly brought in the name of the plaintiff.

There is no force in the objection that the assignment was not *bona fide*. There was not a particle of evidence to impeach its good faith; and the testimony shows an ample and full consideration, and an existing indebtedness, which it was entirely proper to secure and satisfy in this manner.

I discover no error in any of the findings to which exceptions have been taken, and am in favor of the affirmance of the judgment, with costs of appeal.

Judgment affirmed.