(40 Misc. Rep. 453.)

## SWIFT v. ASPELL & CO.

(Supreme Court, Trial Term, New York County. April, 1903.)

**1. AGENT—CONTRACT WITH PRINCIPAL.**
    A contract to pay a commission to an agent for orders for supplies for government vessels, to the extent of one-half of the net profits, is not void as against public policy.

**2. SAME—LEGALITY OF EMPLOYMENT.**
    Employment of an agent to sell goods to the government is valid, where such agent was not expected to, and did not, resort to improper methods.

Action by Charles N. Swift against Aspell & Co. On an agreed state of facts. Judgment for plaintiff.

George L. Carlisle, for plaintiff.
Michael H. Cardozo, for defendant.

BISCHOFF, J. The plaintiff procured orders from the United States government for supplies to be furnished by the defendant for use upon vessels in the public service, and in this action the plaintiff's claim for his agreed compensation, in the form of one-half the defendant's profits upon the orders, is resisted upon the ground that the contract was void as against public policy.

If the rule adopted in the federal courts as to the enforceability of agreements for contingent compensation in procuring government contracts is to be applied, the agreement in suit cannot be upheld. In these courts the broad principle is declared that any agreement which has a tendency to introduce into a government transaction, involving the purchase of supplies, elements other than the single consideration of a faithful execution of orders at the lowest price, is void; and the inference that personal solicitation or influence is to be em-

¶ 1. See Contracts, vol. 11, Cent. Dig. § 607.

ployed is held to be enough to defeat the agreement for compensation, irrespective of what was or was not done. Tool Co. v. Norris, 2 Wall. 45, 17 L. Ed. 868; Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539. The extent of the principle thus asserted is indicated in the opinion of Mr. Justice Field (Tool Co. v. Norris, supra), as follows:

"Agreements for compensation contingent upon success suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil, and strikes down the contract from its inception. There is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments. The introduction of improper elements to control the action of both is the direct and inevitable result of all such arrangements."

The courts of this state, however, when dealing with the question presented under similar contracts, have not gone so far in the acceptance of inferences to avoid the contract, and have drawn a distinction between agreements to procure legislation and agreements to make sales to the government. A person having something to sell has the right to sell it through an agent, and this right is an incident to his ownership. To declare that he may not employ an agent, upon commission, where the government is the prospective buyer, is to take away what is ordinarily one of the elements of the enjoyment of ownership—the unrestricted right to sell. Upon this line of reasoning, commission agreements for a sale to the government have been upheld and enforced in this state where the agreement did not actively require corruption in its performance. Treated as a matter distinct in its nature from agreements to procure legislation, an agreement to compensate an agent for his successful efforts in traffic with the government has been held binding, where unfairness in the dealings or an intention to resort to corruption did not actually appear from the facts (Lyon v. Mitchell, 36 N. Y. 235, 93 Am. Dec. 502; Southard v. Boyd, 51 N. Y. 177); and these cases, while in conflict with the rule laid down in the federal decisions referred to, afford direct and binding authority for a recovery in this action.

For all that appears or is to be inferred here, the plaintiff was expected to, and did, resort to none but the most legitimate methods in procuring these orders for the defendant's goods. Within the rule which, as I have said, obtains in this state, personal solicitation was quite proper, and jealous suspicion of the possibility of corruption cannot be invoked to repudiate the contract. The fact that the defendant was willing to pay one-half the net profits contains a suggestion less sinister than that found in the agreement to pay 10 per cent. of the gross price received, which was the promise upheld in Lyon v. Mitchell, supra, and the measure of the commission in the present case does not necessarily mean that the government must have been overcharged in the usual course of business. If there was a custom in the trade whereby all vendors of such supplies in large quantities were put to the necessity of so fixing their prices as to enable them to pay large commissions to agents, the government would have to pay the prices thus fixed by all available sellers. The mere agreement to pay a large commission from net profits does not

mean that the buyer was necessarily to pay more than the value of the goods under normal trade conditions.

I take the law to be settled in this state that such a contract as this, without attack other than as suggested by its terms, is enforceable; and the effect of these state decisions is not deemed to be overcome merely because in the late case of Veazey v. Allen, 173 N. Y. 359, 66 N. E. 103, the court cited the federal authorities, to which I have referred, in the course of a general discussion of the rules of public policy. The point here involved and directly ruled in the earlier cases in the Court of Appeals was not involved in Veazey v. Allen, and it is not to be inferred that the court intended to overrule these earlier cases by the mere citation of conflicting federal decisions when discussing some different point, especially in view of the fact that in Lyon v. Mitchell, supra, the court expressly declined to follow the case of Tool Co. v. Norris, and expressed the opinion that the latter case was not well considered.

I conclude that the plaintiff should have judgment, upon the agreed facts, in the sum of $6,500, with interest in the sum of $1,560, with an additional allowance of 5 per cent.

Judgment for plaintiff.