Albert Beck, Appellant, *v.* Abraham Bauman, Respondent.

First Department, May 2, 1919.

**Principal and agent — when contract for commissions for procuring contract with United States government not against public policy — jurisdiction of State court in action upon such contract — Federal decisions not binding.**

Where, in an action to recover commissions claimed by plaintiff to be due him from defendant on contracts awarded the latter by the United States government, the sole issue raised by the pleadings and litigated upon the trial was as to whether or not the plaintiff was the procuring cause of said contracts, which were not alleged to be illegal or void as against public policy, and there is no evidence of any undue influence, bribery or other improper means in obtaining said contracts, the defendant should not be permitted to urge upon appeal the question as to the validity of the contract sued upon.

The action in question, involving the validity of such a contract upon grounds of public policy, is not a Federal question, but one for the exclusive jurisdiction of the State court, and, hence, the decisions of the Federal courts are not binding.

APPEAL by the plaintiff, Albert Beck, from a determination and order of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 9th day of January, 1919, reversing a judgment of the City Court of the City of New York, entered in the office of clerk of said court on the 25th day of April, 1918, and also reversing an order of said City Court denying defendant's motion for a new trial made upon the minutes.

The order and determination appealed from dismissed the complaint, with costs.

*Alfred B. Nathan* of counsel [*Prince & Nathan,* attorneys], for the appellant.

*Albert J. Rifkind* of counsel [*Siegeltuch & Silverman,* attorneys], for the respondent.

*Gustave A. Teitelbaum* of counsel [*Louis Jaykowsky* with him on the brief; *Teitelbaum & Jaykowsky,* attorneys], amicus curiæ.

MERRELL, J.:

This action was brought in the City Court of the City of New York to recover commissions claimed by plaintiff to be due him from defendant on two contracts awarded defendant by the United States government, one of which was for the manufacture of 60,000 army overcoats and the other for 100,000 pairs of wool breeches.

The plaintiff is a cousin by marriage of the defendant, and bases his claimed right of recovery upon a written contract entered into between the parties on June 27, 1917, which provided as follows:

" ABR. BAUMAN
" Clothing, for Young Men, Boys & Little Fellows
* * *
" 110–112 Fifth Avenue
" NEW YORK, *June* 27th, 1917.
" Mr. ALBERT BECK,
" Far Rockaway, N. Y.:
" DEAR SIR.— Should you procure a contract or contracts for me from the U. S. Government to manufacture Army

Uniforms of any description, and should I accept such contract or contracts, I agree to pay you a commission of two (2%) percentum of the net amount of monies received from the U. S. Government from the manufacture of such contract or contracts, and further agree to pay the above two per cent. after the receipt of each remittance received by me for the above contract or contracts.

                 " Very truly yours,

                       " ABR. BAUMAN."

The plaintiff claims, and gave evidence to show, that directly after the execution of the contract in question plaintiff called upon an official of the Quartermaster's Department located in the city of New York and applied, in behalf of his cousin, the defendant, for a contract or contracts for the manufacture of army goods; that some discussion was had between the government official and the plaintiff relative to the financial standing of the defendant and of the latter's ability to perform a contract if awarded. The plaintiff was, by the official in the Quartermaster's Department, referred to another official at the city of Philadelphia having charge of the awarding of such contracts. Plaintiff at once went to the city of Philadelphia in response to. such suggestion and discussed with the Philadelphia official, one Captain Wheeler, the letting of contracts to the defendant. At the conclusion of the interview with Captain Wheeler the plaintiff was assured that the defendant would be awarded a contract for the manufacture of army clothing. Plaintiff returned to New York, and on June 29, 1917, told his cousin, the defendant, of the success of his interview, and was assured by the defendant that the plaintiff need do nothing further in the matter, and that he, the defendant, would take up with the New York Quartermaster's Department and with Captain Wheeler at Philadelphia the closing of the contract. The contracts in question were awarded the defendant by the United States government in July and in August, 1917, and it is fairly established by the evidence that the contracts were, in fact, procured by the plaintiff. Defendant failed to inform the plaintiff of having secured the contracts from the government, and plaintiff only learned that said contracts had been awarded

through a publication known as the United States *Advertiser*. Plaintiff at once called upon defendant, who repudiated his agreement and refused to pay plaintiff any commission thereunder.

Defendant took issue with the plaintiff that plaintiff was the procuring cause of the government contracts. Thereupon plaintiff brought this action in the City Court of the City of New York, and the sole issue raised by the pleadings herein and the sole question litigated upon the trial was as to whether or not the plaintiff was the procuring cause of said contracts. Upon the trial the evidence disclosed that the plaintiff was entitled to commissions in the sum of $417.50. The complaint was amended to conform to the proofs, and at the close of the evidence a verdict was rendered by the jury in plaintiff's favor and against the defendant for the sum of $417.50, upon which the judgment appealed from was entered in plaintiff's favor and against the defendant in the sum of $508.28, damages and costs. At the close of the evidence the defendant made no motion to dismiss the complaint, evidently assuming that the evidence raised a fair question of fact for the determination of the jury. After the rendition of the verdict the defendant made the usual motion to set aside the verdict as against the weight of the evidence and upon the exceptions taken upon the trial. This motion was denied. Subsequently the motion to set aside the verdict was renewed and for the first time the defendant raised the point which is now urged as ground for reversal, that the contract under which plaintiff has recovered was illegal and void as against public policy.

Defendant's contention in this respect is based upon certain Federal decisions, commencing with the case of *Tool Co.* v. *Norris* (2 Wall. 54); *Hazelton* v. *Sheckells* (202 U. S. 71), and other Federal decisions holding that a contract for compensation in consideration for procuring a contract with the government to furnish its supplies was unenforcible by the courts, and that such a contract as the one proven here upon which plaintiff has recovered was void as against public policy and unenforcible.

In the instant case the contract under which plaintiff seeks to recover was entirely free from any indication upon

its face that plaintiff was to use any undue influence, bribery or other improper means in obtaining said government contracts. Indeed, the evidence fails utterly to disclose that the contracts in question were procured as the result of any improper influence whatever. Plaintiff had been engaged in manufacturing shirts for the government and had some acquaintance with the officials charged with the awarding of government contracts. The defendant had been executing some contracts with the government for naval uniforms. Plaintiff, desiring to aid his relative by marriage, suggested to the latter that he might be able to procure for him certain army contracts, and thereupon the contract embraced in the letter from defendant to plaintiff above quoted was made. The evidence fails to disclose that either between the parties hereto or between the plaintiff and the government officials any negotiations were had as to the prices to be paid by the government for the clothing to be manufactured by the defendant. Indeed, the prices for the clothing were entirely within the control of the government and were arbitrarily fixed by the government officials. The plaintiff was not present and did not participate in the final letting of the contracts, but bases his claim against defendant entirely as the procuring cause of the contracts which the defendant was finally awarded.

Some suggestion is made that the contracts were procured through the exercise of some political influence upon the government officials, and it is suggested that one Martin, who introduced plaintiff to the official in the Quartermaster's Department in New York, was at the time of the trial enjoying some political preferment. The evidence discloses that while the man Martin at the time of the trial was a private secretary of the city chamberlain of the city of New York, such political appointment came to him over seven months after the contracts in question were obtained. It is quite likely that Martin, who was acquainted with Nixon, may have had some understanding with the plaintiff whereby he was to share in plaintiff's commissions, but so far as any undue or political influence was concerned, the evidence does not indicate that the contract was awarded as the result thereof. Certainly there was nothing upon the face of the contract, and the

evidence fails to disclose any dishonest circumstances in connection with the procurement of these contracts.

Directly contrary to the Federal decisions the courts of this State have uniformly held that contracts of the character of that upon which plaintiff seeks to recover herein, in the absence of proof of some corrupt intention or the exercise of some improper influence in procuring said contracts, are enforcible. In the early case of *Lyon* v. *Mitchell* (36 N. Y. 235) it was held that an agent was entitled to recover commissions for effecting a sale of certain vessels to the United States government, under an agreement by the seller that he should receive such commissions, and that such a contract was not void as against public policy. The case of *Southard* v. *Boyd* (51 N. Y. 177) held that such a contract was valid, and in the absence of some provision of the contract to do an illegal service or to use some corrupt means to charter a vessel, and notwithstanding the fact that the plaintiffs had intimate relations with the government agents and were, therefore, in a position to exercise an influence upon such officials, the possession of such influence did not forbid their employment.

The case of *Cummins* v. *Barkalow* (4 Keyes, 514) seems directly in point. That action was brought to recover a twenty-five per cent commission on profits made by the defendant on a contract with the United States government for 26,000 rifles, the contract having been procured from the government by the plaintiff as the defendant's agent. In referring to the alleged illegality of the contract the court in that case said (at p. 523): " In fact the contract itself on its face contained no such defect. It called for no illegal or improper action on the part of Halderman; it demanded the use of no improper influence * * *. It contained within itself no illegal or corrupt element which stamped it as vicious and incapable of enforcement, and no proof was given to show that it was thus tainted before it was executed."

The case of *Dunham* v. *Hastings Pavement Co.* has been four times before this court, its first appearance being reported in 56 Appellate Division, 244. The action was upon a written contract reciting that the defendant desired to introduce a paving block which it manufactured into the city of New

York, and the defendant undertook to get the city's consent to the use of such blocks. In consideration of a commission of fifteen per cent per square yard the plaintiff was to " use and make all reasonable, honest and lawful efforts to secure the right from the city of New York to make bids for laying such pavement or paving blocks upon the streets of the city of New York." Plaintiff, pursuant to the agreement, secured for the Hastings Pavement Company the right to bid in competition with others for paving contracts. The defendant secured contracts for paving, and laid a large amount of its blocks for the city, and plaintiff sued for his commissions under the contract. At trial court the complaint was dismissed, but upon review by this Appellate Division the plaintiff's exceptions were heard here in the first instance and were sustained and a new trial was granted. This court concurred in an opinion written by HATCH, J., as follows:

" It is conceded that the contract upon its face is not tainted with illegality, nor does any other infirmity appear therein. It is entitled, therefore, to find favor at the hands of the court, unless the proof of acts thereunder is sufficient to establish, as matter of law, that it was a mere cover in legal form for the performance of illegal acts, and that such was the intention of the parties when it was executed. If it was intended when the contract was executed that under it should be performed what in popular language is called ' lobby service,' it is void and cannot be enforced [citing cases].

" These lobby services are generally defined to mean the use of personal solicitation, the exercise of personal influence and improper or corrupt methods whereby legislative or official action is to be the product. It is not, however, the doing of the improper act which is the sole test. There must be the contract and intent that it shall be performed. Of course, the doing of the unlawful act is or may be evidence of the intent and characterize the contract, but it is not necessarily conclusive of it."

After the decision of this court was rendered directing a new trial a motion for a reargument was made, and Mr. Justice HATCH again writing for this court in 57 Appellate Division, 426, reiterated what had been said in support of such a contract on the decision of the appeal. On the retrial the plaintiff

recovered a verdict and an appeal was taken therefrom to this court, where the judgment was reversed upon the ground of erroneous instructions to the jury upon the trial. (95 App. Div. 360.) The case again appeared in this court in 118 Appellate Division, 127, on an appeal by the defendant from an interlocutory judgment overruling defendant's demurrer to the amended complaint. This court there affirmed said interlocutory judgment. The opinion therein by LAUGHLIN, J., reviews the course of the litigation and discusses the decisions of the Federal and State courts as to the validity of such a contract. It was then held by this court that the appeal did not involve a Federal question and that, therefore, the doctrine enunciated in *Hazelton* v. *Sheckells* (*supra*) and other Federal decisions was not controlling, but that the question as to the validity of the contract was to be determined by the decisions of the courts of this State. On appeal to the Court of Appeals the *Dunham* case was affirmed in 189 New York, 500.

In *Swift* v. *Aspell & Co.* (40 Misc. Rep. 453) the action was brought for a share of the profit realized on orders secured by the plaintiff from the United States government for supplies furnished by the defendant to vessels in the government service. The claim was there made that the contract was void as against public policy. Mr. Justice BISCHOFF, in holding that the contract was not void as against public policy, disapproved of the rule laid down by the Federal decisions and held that the decisions of the courts of this State should govern.

It seems to me that the recent case of *Chard* v. *Ryan-Parker Construction Co.* (182 App. Div. 455) sustains the appellant's contention. In stating the opinion of this court in that case Mr. Justice SHEARN said: " In the case of an executory contract, the law will not aid in its enforcement where the contract tends directly to corrupt action or secret and improper resort to public officials. In an action to recover compensation for legitimate services actually rendered under a contract which tends to corrupt action or to secret and improper resort to public officials, in the absence of any proof that such was the intention and purpose of the contract, a recovery may be sustained."

. In the case at bar there is absolutely no proof offered upon

the face of the contract or upon the trial in any manner indicating that the contract was corrupt or that it involved any secret or improper methods to influence official action in awarding the contracts. There is an utter absence of any proof that any such intention or purpose was entertained by the contracting parties. Indeed, in the opinion of the Appellate Term, from which this appeal is taken by consent of the Appellate Term, it was said: " While there is no actual proof in this case of corrupt acts or intent, the only conclusion that can be drawn from the evidence is that it was the intent of the parties that Federal contracts should be obtained by plaintiff for defendant through the influencing of official conduct by personal, political or other considerations independent of the merits." (105 Misc. Rep. 584.)

Thus, while admitting that there was no proof of any corrupt act or intent, the Appellate Term concluded, I think, without justification or support in the evidence, that there must have been some dishonesty and evil intent in obtaining the contracts.

Furthermore, there was no allegation in the answer that the contract was illegal or void as against public policy. The question was not raised upon the trial. The only question litigated was as to whether or not the plaintiff was the procuring cause of the contracts awarded to the defendant. As stated in the opinion of the Appellate Term, " There was no claim made in the pleadings or on the trial that the contract was illegal. At the close of the evidence no motion was made to dismiss, the defendant thus conceding that a question of fact was presented for consideration by the jury."

Under these circumstances it seems to me that the defendant should not be permitted at this late hour to inject into the litigation the question as to the validity of the contract sued upon, particularly in the absence of proof of the adoption of improper means to obtain the contracts.

Without reviewing the evidence in detail, the record is quite barren of any indication of any improper influence being used in obtaining the contracts in question.

The suggestion is made that the question here presented is with reference to a contract with the United States government, and that, therefore, we should be bound by the decisions

of the Federal courts as to the validity of the contract in question. This court has several times held that such an action as this, involving the validity of such a contract upon grounds of public policy, is not a Federal question, but one for the exclusive jurisdiction of our own courts. The action is between citizens of this State, and is properly determinable under the law as settled by the State courts. (*Dunham* v. *Hastings Pavement Co.*, 118 App. Div. 127; *Southard* v. *Boyd*, 51 N. Y. 177; *Lyon* v. *Mitchell*, 36 id. 235.)

I conclude that the determination of the Appellate Term should be reversed, and the verdict of the City Court reinstated, and the judgment entered thereon affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Determination reversed, with costs in this court and in the Appellate Term, and judgment of City Court affirmed.