### W. T. MILLS *vs.* D. S. MILLS and WM. DOLSEN.

An agreement to convey land to another, upon the consideration that the latter shall give all the aid in his power, spend his time, and use his utmost influence and exertions, to procure the passage of a law pending before the legislature conferring upon the covenantor a valuable public franchise, is illegal and void, as being against public policy.

THIS action was brought to enforce the specific performance of a contract for the conveyance of thirty-four city lots of land in Brooklyn. The agreement recited that the plaintiff had been licensed by the city of Williamsburgh to lay a rail track for the running of cars on Division avenue, and that a bill was pending before the legislature to authorize the defendant Mills to lay a like track on the same avenue. It then stipulated that, in consideration of the agreement of the defendant Mills to discontinue a slander suit he was prosecuting against the plaintiff, and convey the land in question to the plaintiff, he (the plaintiff) would cause his said license from the city of Williamsburgh, and the good will of Ivans & Mills in an omnibus line on the same avenue, to be assigned to the defendant Mills; and also "will give all the aid in his power, spend such reasonable time as may be necessary, and generally *use his utmost influence and exertions to procure the passage to a law*" of the before mentioned bill as amended, granting authority to the plaintiff and the defendant Mills to construct such road; and also will, so far as reasonably necessary, assist and aid, to the extent of his ability, in procuring for the defendant Mills "a license from the city of Brooklyn for the construction of such rail road, and the running of cars on said Division avenue, or so much thereof as lies within the control of the said city." There are mutual stipulations that neither party will co-operate in the introduction of a bill for the construction of a rail road on said avenue, "*or in any way give aid or countenance to any such measure.*" The defendant Mills stipulates to convey, "when the said bill heretofore intro-

duced in the senate as aforesaid, with the amendment or amendents above referred to, or some like bill, shall become a law." The complaint did not allege that any such bill became a law; and the statute book (1853) shows the contrary. The action was referred to a referee, to hear and determine; who dismissed the complaint, on the ground that the contract was illegal. Judgment was entered in favor of the defendant, for costs, and adjudging the agreement void; and the plaintiff appealed.

*C. C. Egan,* for the appellant. I. The contract is legal and valid. Its purpose is lawful, and its consideration legal and sufficient. (*Sedgwick* v. *Stanton,* 14 *N. Y. Rep.* 289.) The consideration of the agreement was: The withdrawal of the plaintiff's petition from the legislature; the use of his influence and exertions to procure the passage of a bill theretofore introduced in the legislature; the assignment to the defendant Mills of all the right, title and interest of Ivins & Mills under any certificate filed under the provisions of the general rail road act; the assignment to the defendant Mills of the license granted by the common council of Williamsburgh; the assignment to the defendant Mills of the good will of the stage line of Ivins & Mills; the assignment to the defendant Mills of all the right of the plaintiff accruing to him under the act when passed; the continued running of the stage line for fifteen months at a great loss; the discontinuance of the slander suit, with costs. The agreement by the plaintiff to "give all the aid in his power, and generally use his utmost influence and exertions to procure the passage to a law" of the act referred to, is to be construed to mean as it was intended, and as it is expressed, that he will use such influence and exertions in a *legal* and *proper* manner; and there is nothing in this case to show that any other than a legal and proper use was made. (*Sedgwick* v. *Stanton, supra.*) The influence which the plaintiff was to use, was not individual or private. It was

not so intended by the contract, is not so expressed or intimated therein, and there is no *proof* of any such. In the cases of *Harris* v. *Roof's Ex'rs*, (10 *Barb.* 489,) and *Rose* v. *Truax*, (21 *id.* 361,) there was *proof* that the services sought to be recovered for were lobby services and personal solicitation of individual members, following them to their rooms, &c. In the case of *Gray* v. *Hook*, (4 *N. Y. Rep.* 449,) the agreement was upon the withdrawal by the plaintiff of an application for an appointment to office, where the plaintiff and the defendant were the only applicants, in favor of the defendant, to divide the fees of such office.

II. The referee should have allowed the plaintiff to go into proof to show the nature and character of the services contemplated by the contract and actually performed under it, by the plaintiff. Without proof of any kind on the question, the referee was not warranted in assuming an evil intent from words innocent in themselves, and adjudging the contract illegal and void upon its face.

III. But the defendants cannot object to the consideration. If the parties have clothed the title with possession, as they have in this case, or have otherwise acted on it as an existing ownership, they are held to have perfected the agreement in equity, and even if the terms rest in parol, a conveyance may be decreed. (*Adams' Eq.* 86.) If the contract is executed, a consideration is immaterial. (*Adams' Eq.* 79, *marg. paging. Reed* v. *Long*, 4 *Yerger*, 68.)

IV. The referee should have rendered judgment for the plaintiff, on the demurrer of the defendants. The judgment entered herein should be reversed with costs.

V. The execution, acknowledgment and deposit of the deed by the defendant Mills and wife, and the recitals contained in the deed, operated as an estoppel, running with the land and converting it to an interest which the court will adjudge accordingly. It binds parties and privies in blood and estate and in law. Ejectment could be maintained upon the mere estoppel. (1 *Greenl. Ev. 9th ed.* §§ 22, 24, *note.*)

Mills *v.* Mills.

*J. M. Van Cott,* for the respondent. I. The agreement is against public policy, and is void. (1.) It is a *log-rolling* agreement, first, to defeat a measure then pending before the legislature; second, to combine to obtain the passage of another act granting a rail road franchise to the contracting parties; third, to combine to procure a like grant from the municipal legislature of Brooklyn; fourth, to combine against any like legislative grant to any other party or parties. Combinations for such private purposes are contrary to the common duties of citizenship, and corrupting and dangerous in their tendency. (2.) It is a contract for legislative jobbing and corruption, "to use his utmost influence to procure the passage of a law." Worcester's dictionary defines the verb thus: "To act upon with directing or impulsive power; to guide or lead; to modify; to actuate; to sway." This, then, according to the popular sense of "influence," is an agreement to impel, guide, lead, actuate or sway the legislature to reject a pending bill, and to pass another bill granting a franchise to the contracting parties. (3.) The word "influence" has acquired a precise legal signification. A citizen, acting on public motives, may exert himself for or against particular legislative or executive action; but a contract (based on motives of private gain and stipulating for a compensation) to "influence" such legislative or executive action is corrupt, and is void, *per se.* By its terms, the plaintiff would have disentitled himself to all benefit under the contract, and lost an estate if, as a citizen, he had signed a petition in favor of the grant of the interdicted franchise to any other person or persons. (*a.*) A contract, in consideration of a sum of money, to "influence" a judge to render a favorable decision, would be manifestly illegal. (*b.*) A contract, for a like consideration, to "influence" a witness to give favorable testimony, would be palpably void. (*c.*) A contract to compensate for "influence" to induce the executive to pardon a convict, or appoint to an office, or to veto a legislative measure, would fall under the same legal condem-

nation. Much more, in all these cases, would the contract be illegal, if the reward were made contingent on successful exertion of the "influence." (*d.*) Contracts *not* to oppose an insolvent's discharge, are corrupt and illegal. (*e.*) Contracts *not* to compete at auction sales, are illegal. (4.) The plaintiff, not being a member of the legislature, could not act upon it, and "procure" the passage of a law by his "influence," otherwise than by personally soliciting and influencing, or engaging others personally to solicit and influence, the individual members of the legislature, out of legislative session. Persons "cannot with propriety be employed to exert their personal influence with individual members, or to labor in any form privately with such members, out of the legislative halls." (*Per Selden, J.,* 4 *Kern.* 294.) (5.) The principle invoked has been applied in a great number and variety of cases. (*Marshall* v. *Bal. and Ohio R. R. Co.,* 16 *How. U. S. R.* 314. *Gray* v. *Hook,* 4 *Comst.* 449. *Devlin* v. *Brady,* 32 *Barb.* 518. *Satterlee* v. *Jones,* 3 *Duer,* 116, 17. *Davison* v. *Seymour,* 1 *Bosw.* 92. *Bell* v. *Leggett,* 3 *Seld.* 176. 2 *Kent's Com. marg.* 466, 7, *and notes. Broom's Max. marg.* 573, 583. *Bartle* v. *Coleman,* 4 *Peters,* 188. *Harris* v. *Roof's Ex'rs,* 10 *Barb.* 489. *Rose* v. *Truax,* 21 *id.* 361. *Sedgwick* v. *Stanton,* 4 *Kern.* 289. *Wall* v. *Charlick,* 8 *N. Y. Leg. Obs.* 230. *Eddy* v. *Capron,* 4 *R. I. Rep.* 394. *Cunningham* v. *Cunningham,* 18 *B. Monroe,* 19. *Barton* v. *Port J. Plank Road Co.,* 17 *Barb.* 397. *Coppock* v. *Bower,* 4 *Mees. & Welsb.* 361. *MS., Dingeldim* v. *Third Av. R. R. Co. Pingry* v. *Washborne,* 1 *Aiken,* 264. *Phillim. on Jur.* 66. 2 *Poth. on Oblig. p.* 2, *app. by Evans.*)

II. Even if the contract is not void at law, it is such a one as a court of equity will not lend its aid specifically to execute. Several of its provisions are not enforceable against either party specifically, or in damages; and if the contract is not enforceable in its entirety, it must entirely fail. (*Vaux-*

*hall Bridge Co.* v. *Spencer,* 2 *Madd.* 356. *Josephs* v. *Pebrer,* 3 *Barn. & Cres.* 639.)

*By the Court,* BROWN, J. By the agreement of the 8th June, 1853, referred to in the pleadings in this action, the defendant David S. Mills covenanted to convey to the plaintiff, by deed with full covenants, certain lots of land, thirty-four in number, situate upon Myrtle avenue and Witherspoon street in the city of Brooklyn. The deed of conveyance was to be executed by himself and wife and delivered when the bill, which before that time had been introduced into the senate of the state of New York, with the amendments, or some similar bill, to which I shall presently refer, should become a law. The agreement recited that a bill had recently been introduced into the senate of the state granting to David S. Mills and others a franchise for a rail road on Division avenue, in the county of Kings, and for the operating of trains of cars thereon. The considerations for the grant and conveyance of the 34 lots of ground were : 1st. The transfer and assignment to David S. Mills of the right, title and interest of the firm of Ivins & Mills in and to a certificate or declaration filed by them under the general rail road act, together with the license theretofore made to them by the common council of the city of Williamsburgh, and also the good will of an omnibus line of Ivins & Mills on Division avenue. 2d. A covenant by William T. Mills " that he would give all the aid in his power, and spend such reasonable time as may be necessary, and generally use his utmost influence and exertions to procure the passage into a law of the said bill heretofore introduced into the senate of the state of New York, as hereinbefore mentioned, or any other bill to the same end ; the said bill being so amended as to limit the grant therein mentioned to the said parties hereto, without any other party in interest in such grant except them ; and also to be amended as may mutually be agreed between said parties, from time to time, until the same shall become a law. And fur-

ther, when any such bill shall become a law, said party of the first part will release, assign and transfer to the party of the second part, by a good and sufficient instrument in writing under his hand and seal, all the right, title and interest which shall accrue to or belong to him, the party of the first part, under such law." 3d. A further covenant by William T. Mills, "that he will not in any way co-operate or conspire with any other person whomsoever at the introduction into either branch of the legislature, or elsewhere, of any proposition for the construction of any rail road whatever on Division avenue, in the county of Kings, or in any way give aid or countenance to any such measure." The purpose of the plaintiff's action was to obtain a specific performance of the contract, and to compel David S. Mills to execute and deliver the deed for the 34 lots of ground in the city of Brooklyn. William Dolson was made a party upon the allegation and charge that the lots had been conveyed to and were then held by him without consideration, and with full knowledge of the plaintiff's equitable rights thereto. . The defendants put the principal allegations of the complaint at issue by their answers, and the action was referred to Henry Nicoll, Esquire, to hear and determine. Upon the hearing before the referee, the counsel for the plaintiff read the pleadings, and also read in evidence the agreement executed under the hands and seals of William T. Mills and David S. Mills. The counsel for the defendants then moved that the complaint be dismissed, which motion the referee granted, upon the ground that the agreement was illegal and void. Judgment having been entered, upon the report, the plaintiff appealed.

I have quoted the covenants at large from the agreement for the purpose of seeing the precise nature of the plaintiff's obligation under the contract, and what were the nature of the services which he was to render as an equivalent for the 34 lots of ground. He was to give all the aid in his power, spend his time and use his utmost influence and exertions, to procure the passage of a law conferring a valuable public fran-

Mills *v.* Mills.

chise upon another. These are his very words. The state owed to the proposed grantee no duty, no debt and no obligation which it did not owe to all the rest of its citizens, and it withheld no property or estate from him to which he had any manner of right. It might, however, grant the franchise, and should grant it, if thereby the public interest would be served, and not otherwise. The plaintiff was not therefore employed, as he lawfully might be, to prosecute a private claim, nor as he also might have been, without the breach of any moral duty, to collect information, prepare statements and furnish arguments freely and openly to a legislative committee in favor of any public measure which might incidentally benefit individuals. His employment went far beyond this. He was to give all the aid in his power, spend his time and use his utmost influence and exertions, to procure for the defendant from the legislature that which, if granted at all, should have resulted from a sober examination and sincere conviction of its public necessity and utility, and not from the exertions and influence of hired and mercenary outsiders. The kind of influence to be used and applied to move the minds of the lawgivers to think favorably of the proposed rail road franchise in Division avenue, is not defined and described in the contract. But we know well enough what it is. We know that similar grants have been the cause of great scandal and reproach to the legislation of the state, and that the influences employed to procure their passage, by persons like the plaintiff, who are not intrusted with seats in the legislature, have tended to corrupt the public morals, weaken the sense of public duty, impair the public virtue, and lessen the hope and confidence which men have hitherto had in the perpetuity of representative government. "All contracts or agreements which have for their object any thing which is repugnant to justice, or against the general policy of the common law, or contrary to the provisions of any statute, are void. The principle is universally recognized, and·

has often been applied in our own courts to contracts which had for their object the perversion of the ordinary operations of the government; such as contracts to prevent a fair competition at legal sales by auction; contracts to prevent the administration of the insolvent laws; and contracts by which one person engages to pay another for his aid and influence, even in procuring an appointment to office. (*Bell* v. *Leggett*, 3 *Comst.* 176.) So, also, the same principle has been applied to a contract to obtain signatures to a pardon. To procure the passage of an act of the legislature by using personal influence, and an agreement to pay a sum of money for withdrawing opposition to an act touching the interests of a corporation, are equally offensive and repugnant to public morality. It will not be useful to pursue the subject further, or to quote authorities in support of what has been said. They are numerous, and I could add nothing to the argument or to the force and power of expression with which some of the cases condemn all contracts of the kind. Some of the considerations mentioned in the agreement are doubtless unexceptionable, and, standing alone, would support the covenants of the defendant. But where the contract grows out of or is connected with an illegal act, the court will not lend its aid to enforce it.

The judgment should be affirmed.

[DUTCHESS GENERAL TERM, May 12, 1862. *Emott, Brown, Scrugham* and *Lott*, Justices.]