Van Brunt, P. J.
The plaintiffs in this action were attorneys and counselors of this court, and this action was brought to recover compensation for services rendered to the defendants in advising and consulting with the defendants concerning certain proposed tax legislation of the legislature of the state of New York, and in advising and consulting with the attorney-general and comptroller of the state in behalf of the defendant respecting suc-h legislation, and making arguments before said attorney-general and comptroller resulting in the adoption of said proposed legislation as a department measure by the comptroller’s office, and for services in negotiating and accomplishing the settlement of certain tax legislations pending against the defendant.
The answer of the defendant denies the contractas alleged, and further answering admits that certain services were rendered by one of the plaintiffs, Gary, but alleges that they were not of the value of over $500, and denies that the services so rendered by Cary were rendered upon a formal retainer, or an actual contract, or that payment should be made therefor. By consent, the case was referred, and the referee reported in favor of the plaintiff, finding the value of the services to have been $5,000.
It is claimed upon the part of the defendants that the services for which compensation is sought were based upon an illegal contract, and that therefore no recovery could be had therefor.
The learned referee in his opinion in dealing with this objection, states that no such defense is set up in the answer, and that the testimony which led to the point being raised came up incidently. The fact that no such defense is set up in the answer, formed no objection to its consideration. Under the general denial contained in the answer, the defendants had a right to establish such facts as would show that no valid contract had ever been entered into between these parties. This subject seems to have been considered in the case of Oscanyan v. Arms Co., (103 U. S., 261) in which the court say, “The position of the plaintiff that the illegality of the contract fn suit cannot be introduced, because not formally pleaded, does not strike us as having much weight. We should hardly have deemed it worthy of serious consideration had it not been earnestly *206 pressed upon our consideration by learned counsel. The theory upon which the action proceeds is that the plaintiff has a contract valid in law for certain services. Whatever shows the invalidity of the contract shows that in fact no such contract as alleged, ever existed.”
A consideration of the effect of a general denial in a case which presents precisely the same principle, may serve to illustrate the question under review. The complaint alleges a contract. The answer denies it. The plaintiff proves an oral contract which, by the Statute of Frauds is required to be in writing, or proves a contract in writing not subscribed as required by that statute.
The defense, under a general denial, that there was no valid _ contract, would clearly be available, and that is all that is sought to be established in the case at bar. The plaintiff alleges a contract, and in his proof of the contract, introduces evidence which shows its invalidity. Under a general denial the defendant may avail himself of this evidence and insist that his denial has been established in that no legal or valid contract has been proven.
This brings us to the consideration of the question whether the plaintiffs established any valid contract authorizing them to recover for the services which they rendered to the defendant. It appears from the evidence that the state had recovered a judgment for taxes under the Laws of 1880, against the defendant for a very large amount of money, and the defendants were anxious in regard to the result of a decision in the court of appeals, to which court the case was upon its way.
The president then requested the plaintiff Cary, to go to Albany, and see if some relief could be obtained from the state officers in view of the claimed injustice of the judgment. The plaintiff went to Albany, saw the comptroller and attorney-general, who informed him they could do nothing in the premises. He then associated himself with his co-plaintiff, Mr. Wells, and they took up the interest of certain mining companies who were affected in the same way with the telegraph companies under the tax law-referred to. The plaintiff and Mr. Wells, went to Albany and made arguments there before the attorney-general on behalf of the mining companies, with a view to the passage of an act which they proposed to introduce, which would relie ve_ the mining companies from the tax. Upon discussion with the officers of the defendant they were requested to include the defendant, if possible, in the bill which they had then already prepared on behalf of the mining companies. To this they consented, and the plaintiff Cary went to Albany and had interviews with the comptroller and attor *207 ney-general. At these interviews he sought to get the state officers to adopt this bill as a department measure.
This they agreed finally to do, upon the defendant settling up the original judgment. Thereafter Mr. Cary went two or three times to Albany, and on one or more occasions after the bills had been proposed saw prominent members of both branches of the legislature, explaining the bill to them and urging them to take an interest in its passage or to facilitate its passage as best they could. For these services a charge of $5,000 was made, which was found by the referee to be reasonable.
From‘this testimony it appears that compensation for these services was allowed by the referee, consisting of personal solicitation of the heads of departments and members of the legislature. No other construction can be placed upon the testimony offered on the part of the plaintiff, and services of this kind have been repeatedly held in the U. S. courts and in the courts of this state, to entitle the party to no compensation, because contracts for such services are against public policy, and not enforceable in courts of law.
In the case of Mills v. Mills (40 N. Y., 543), it was held that such a contract was void as against public policy in that it furnishes a temptation to the plaintiff to resort to corrupt means or improper devices to influence legislative action.
In the case of Sedgwick v. Stanton (14 N. Y., 289), the grounds upon which the invalidity of such a contract rests are set forth with great distinctness and precision. The court say: “ Persons may no doubt be employed to conduct an application to the legislature as well as to conduct a suit at law, and may contract for and receive pay for their services in preparing documents, collecting evidence, making statements of facts, or preparing and making oral or written arguments, provided all these are used, or designed to .be used, before the legislature itself or some committee thereof as a body, but they cannot, with propriety, be employed to exert their personal influence with individual members, or to labor in any form privately with such members out of the legislative halls. Whatever is laid before the legislature in writing or spoken openly or publicly in its presence, or that of a committee, if false in fact may be disproved, or if wrong in argument may be refuted, but that which is whispered in the private ear of individual members is frequently beyond the reach of correction.”
The particular services for which compensation is sought in this action was for whispering into the ears of individual members of the legislature “ urging that they take an interest in the passage of the bill and facilitate its passage as best they could.”
*208 In the case of Lyon v. Mitchell (36 N. Y., 235), the right to employ counsel to appear before a legislative committee or before the legislature itself to advocate the passage of a measure in which the individual has an interest is recognized. But it is held that personal solicitation of the president, the governor, or the heads of the departments for favors or for clemency are not the lawful subjects of contracts. The apprehension that considerations other than those of a high sense of duty and of the public interest may thus be brought to influence their determination forbids this employment. And this court in the case of (Harris v. Simonson, 28 Hun, 318), lays down the rule which must govern in the construction of contracts of the description under consideration with great clearness and force.
The verdict was recovered for what was claimed to have been the value of personal services rendered by the plaintiff under the employment of Samuel Wood, the testator, in and about procuring the passage of an act of the legislature for the incorporation of musical colleges, etc.
The court said: “Claims for services of the nature of those alleged to have been performed require to be carefully, cautiously and minutely examined in order to avoid the judicial" sanction of demands arising out of the exercise of improper and vicious influences over members of the legislature. Some portion of the services relied upon in support of the claim made, consisted in direct appeals made to individual members of the legislature. They were not of the character which has been sanctioned permitting recoveries in cases of this nature, for they were not clearly made to appear to consist of mere information or arguments _ tending to expedite the proper passage of the act. Such information and arguments are more appropriately directed to the committee, as such, having the bill in charge, or to the body considering the propriety of its enactments. The prevailing principles of law have been very cautiously adopted on this subject, for the purpose of avoiding the effect of sanctioning direct or indirect influences brought to bear upon members of a legislative body to secure the passage of an act required to be officially considered by them, and for that reason it has been held that legislators should act with a single eye to the true interests of the whole people, and courts of justice can give no countenance to the "use of means which may subject them to be misled by pertinacious importunity and indirect influences of interested and unscrupulous agents or solicitors; and public policy and sound morality did, therefore, imperatively require that courts should put the stamp of their disapprobation on every act, and pronounce void every act the ultimate or probable tendency of which would be to sully the *209 purity or mislead the judgments of those to whom the high trust of legislation is confided. To warrant a recovery in such a case as this, the evidence should be required to establish the fact with reasonable' clearness that the services alleged to have been performed were such as the law will sanction in aiding and promoting legislative action.”
Under the principles thus enunciated, it is clear that no recovery can be had for services consisting of personal application to legislators or other officers of the government.
But it may be said that a recovery may be had for the services rendered in arguments before the attorney-general aud comptroller. It is sufficient to say as far as this appeal is concerned, that the judgment was recovered upon the services rendered which included the personal solicitations of the members of the legislature by one of the plaintiffs. But even if that fact did not exist, it would appear from the whole nature of the transaction that the services, such as were expected to be rendered, were of a character which come within the definitions already referred to of illegal contracts, being against public policy.
The personal solicitations of the attorney-general and comptroller were evidently contemplated, and the application to members of the legislature in furtherance of the proposed legislation was clearly within the scope of the employment.
This being the nature of the services rendered, there can be no question, but that no recovery can be had therefor, without running counter to every principle which has heretofore been enunciated by the courts.
The judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event.
Daniels and Brady, JJ., concur.