WILBUR *v.* NEW YORK ELECTRIC CONSTRUCTION CO.

(*Superior Court of New York City, General Term.*   January 5, 1891.)

1. LOBBYING CONTRACT VOID—PUBLIC POLICY.
     A contract for services to be performed in "soliciting, advocating, and procuring" from a municipal corporation a franchise for lighting its streets is contrary to public policy, and void.

2. CONTRACTS WITH CORPORATION.
     An alleged contract with a defendant corporation is not established by evidence of a contract with its founder or chief promoter, entered into before the actual incorporation of the former.

Exceptions from jury term.

Action by G. A. Wilbur against the New York Electric Construction Company on a contract. Judgment for plaintiff.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*Jas. Edward Graybill*, for plaintiff.   *A. J. Dellenhoefer*, for defendant.

INGRAHAM, J. The contract sued on is alleged in the complaint as follows: "At the special instance and request of the defendant herein, the plaintiff rendered to and for said defendant certain work, labor, and services in soliciting, advocating, and procuring for and in the name of the said defend-

-ant, from the municipal corporate authorities of the city of Utica, in the state of New York, a three-years contract for the lighting of said city by electricity, and for a franchise granting to said defendant the right to erect and use wires, poles, and other necessary appurtenances in the streets and thoroughfares of said city, and to transact its business in and throughout ·said city, and in the making of drafts, surveys, examinations, calculations, illustrations, and drawings to be used in the preparation of the bid for the con--tract aforesaid, and in the arguments before the said municipal corporate authorities; and, after the awarding of said contracts to said defendant by ·said municipal corporate authorities, in making examinations and surveys for the location of, and in locating and superintending the erection of, the electric lights in said city pursuant to the said contract." To prove this -allegation in the complaint, plaintiff testified to a conversation between him--self and one Hapgood, at which time Hapgood told the plaintiff "to go to Utica, and, if possible, secure a contract for lighting all of the city, or as ·much of it as he could get. He told me he wanted me to secure a contract, -and wanted me to use my own discretion in the matter of putting the bid and doing the preliminary work." Plaintiff went to Utica, and, as portion of :the work that he did, he said: "I made frequent canvasses of the city, and ·got acquainted with nearly all the aldermen. I explained how much more -advantageous it would be lighting the city by our system of electric light than by their combined system. I got many of the councilmen on my side. As time progressed, I made frequent canvasses to them and canvasses of the city. On Friday evening I had a meeting with the committee of the council in the chairman's office, at which the mayor was present. I told them at :that time what I proposed to do and how, and just what my bid would be, and -asked them if they thought it was for the best interest of the city to advocate ·my bid, and they promised to do so. That evening the bids were all opened; ·it was a very hotly contested fight, and there were many bids by different ·companies." Plaintiff was not a lawyer, but described himself as in the elec-tric light business, and as representing other electric light companies in pro-·curing contracts for the sale of their apparatus. He said, in answer to a ·question, "What prior experience have you had before lobbying in Utica?" that he had been at it more or less since he had been in business, all his business life.

I think this contract is void, as against public policy. It has long been settled that a contract to exert personal influence to induce a public officer or member of a legislative body to do any official act is illegal and void, and this principle has been applied to all the departments of government, judicial, ·executive, or legislative, and is placed upon the broad principle that all contracts leading to secret, improper, and corrupt tampering with official action are void. Thus in *Sedgwick* v. *Stanton,* 14 N. Y. 294, the court say: "Persons may no doubt be employed to conduct an application to the legislature as well as to conduct a suit at law, and may contract for and receive pay for their services in preparing documents, collecting evidence, making statements of facts, or preparing and making oral and written arguments, provided all these are used or designed to be used for the legislature itself, or some committee thereof as a body, but they cannot, with propriety, be employed to ·exert their individual influence with individual members, or to labor in any form privately with such members out of the legislative halls. The point of the objection in this class of cases, then, is the personal and private nature of the services to be rendered." And in *Mills* v. *Mills,* 40 N. Y. 546, it was stated: "To procure the passage of such a law for the benefit of the defend--ant, he undertook to use his utmost influence and exertion. This contract is void as against public policy. It is a contract leading to secret, improper, -and corrupt tampering with legislative action. It is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret

and improper resources should be had. It is enough that the contract tends directly to those results; it furnishes a temptation to the plaintiff to resort to corrupt means or improper devises to influence legislative action. It tends to subject the legislature to influence destructive of its character, and fatal to public confidence in its action." And in *Tool Co.* v. *Norris*, 2 Wall. 45, an agreement for compensation to procure a contract from the government to furnish it supplies was held against public policy and void, the court saying: "There is no real difference in principle between an agreement to procure favors from legislative bodies, and an agreement to procure favors in the shape of contracts from the heads of departments. The introduction of improper elements to control the action of both is the direct and inevitable result of all such arrangements." It is sometimes difficult to draw the line between contracts that fall within the prohibition above stated, and those which provide for legitimate services; for it may be said to be settled that when a person has something to sell which the government wishes to buy, or is able to make a contract to do an act which the government wishes done, he has a perfect right to appoint an agent to act for him in making the sale or the contract, and that such an agent is entitled to recover compensation for his services. And it is also clear that an employment to appear before a legislative committee, and publicly favor the passage of a law, is valid; but it seems to me equally clear that a contract which contemplates the use of personal influence or solicitation with public officers to procure a contract is as much opposed to public policy as a contract to use personal influence or solicitation with members of the legislature to procure the passage of a law. In either case, the object to be attained is to induce a public officer or a legislator to act from personal motives, and not for the benefit of the public,—in other words, to violate his duty; and public policy requires that no contract which recognizes such influences shall be upheld. The case of *Lyon* v. *Mitchell*, 36 N. Y. 235, is an illustration of a contract which has been held valid, as that was the mere appointment of an attorney to sell property to the government, with an agreement for compensation for services to be rendered under the employment. Nothing appeared in the contract that would indicate that anything was to be done by the agent, except the ordinary act of offering to the government officials the property to be sold. In this case, however, the services to be performed were "soliciting, advocating, and procuring" a contract and a right to use the street from the common council of the municipal corporation. The express object was to influence the municipal corporate authorities of the city to grant a contract, and the conduct of the plaintiff in his interviews with the aldermen and councilmen, and the influence he endeavored to exercise over them, is a practical construction of what was intended by the parties, and the object of the employment.

I also think the proof failed to establish that any contract was made with the defendant at the time of the alleged conversation with Hapgood. The defendant was not incorporated. Hapgood spoke in the first person. What he said was: "I will pay you for your time and services and all expenses, and, if you get the contract, we will divide the commissions on the sale of the plant." And again he said: "Get the contract, and I will do what is right by you; we will divide the commission or sell the plant." There was thus no agreement on behalf of a company to be formed, whereby the company, on accepting the benefits of the contracts, would be held liable for its obligations, and the form in which the compensation is to be made would indicate that it was one-half of the commissions that Hapgood was to make or receive that was to be divided with plaintiff. The corporation, after it was formed, was the contracting party, sold the plant to the city of Utica, and received a certain consideration therefor. It received and could receive no commissions, as it was the principal, and made the sale. It was the broker or agent for the company who would receive the commission, and it is clear that the agree-

ment that was made was to divide, not what the company should receive, but what Hapgood individually should receive. Plaintiff, on cross-examination, was asked, "Who got the commissions?" and answered, "Nobody got the commissions, but there was $10,000 commission on the plant." If nobody got the commissions under the contract, as alleged in the complaint as amended, there was nothing to divide, and consequently plaintiff failed to show that he was entitled to recover from any one, and in no aspect of the case can it be held that the corporation that was not in existence at the time of the employment could be held liable on an agreement made between third parties to divide commissions for services to be rendered on a sale to be made by the corporation. I think, therefore, the plaintiff failed to show a cause of action, and the complaint should have been dismissed. Exceptions sustained, new trial ordered, with costs to abide the event.